UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN M. REGAN,

       Plaintiff,

v

       File No.: 2:13-cv-11368 GAD
       Hon. Gershwin A. Drain

DAVID TODD and ROBERT WOJCIECHOWSKI,
in their individual and official capacities, as Police
Officers for the City of Sterling Heights Police
Department,

       Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#15]

**I.   INTRODUCTION**

On March 27, 2013, Plaintiff, Kevin M. Regan ("Regan"), filed the instant Complaint against Defendants, David Todd ("Todd") and Robert Wojciechowski ("Wojciechowski"). Defendants are police officers for the city of Sterling Heights Police Department. Regan's Complaint alleges various 42 U.S.C.A. § 1983 claims against Defendants. Presently before this Court is Defendants' Motion for Summary Judgment [#15], filed on January 24, 2014. This Court granted Plaintiff's Motion for an Extension of Time to File a Response [#28], and he subsequently filed a Response on April 25, 2014. Defendants filed a Reply on May 2, 2014. Oral arguments were heard before the Court on May 20, 2014.

Based on the facts below, this Court will DENY Defendants' Motion for Summary Judgment.

**II.     FACTUAL BACKGROUND**

At approximately 1:35 a.m. on March 28, 2010, Plaintiff was at home in his apartment building doing his laundry. It is undisputed that Plaintiff had to walk from his second floor apartment down to the apartment building's basement to access the laundry room. Plaintiff arrived home from work at approximately 11:30 p.m. that evening and was drinking beer in his own apartment as he did his laundry. Plaintiff was 21 years old at the time of the incident.

Defendants were dispatched to Plaintiff's apartment building to investigate a drunken disorderly/noise ordinance violation. The report described "disorderly intoxicated juveniles walking up and down the halls" of an apartment building located at 8112 Constitution in the city of Sterling Heights. Defendants arrived at the apartment building within a few minutes of the dispatch to investigate.

Officer Wojciechowski arrived at the building first. When Officer Todd arrived, Defendants first encountered another individual, not Plaintiff, in the parking lot of the complex. This person had backed his car out of a parking space and almost struck Officer Wojciechowski's car. Defendants handcuffed the individual, placed him face down on the hood of the police car and patted him down.

As Defendants approached the common entrance to the apartment building, they could see Plaintiff walking in the entranceway through the windowed door. Defendants knocked and signaled for Plaintiff to open the door. Plaintiff let Defendants into the building and onto the landing area of the first floor stairwell.

Defendants testified that they immediately smelled a strong odor of intoxicants coming from Plaintiff. Additionally, Defendants noticed Plaintiff's eyes were glassy, his

speech was slurred, and he appeared to be underage. Defendants asked Plaintiff why he was walking the halls at 1:30 in the morning. Plaintiff stated that he was "doing his laundry." Plaintiff claims Defendants responded by telling him, "[w]rong answer, motherfucker," and moved to physically detain him. When Officer Todd attempted to secure Plaintiff's hands, Plaintiff, believing Officer Todd was reaching for the keys Plaintiff clutched in his hand, instinctively pulled his hand back in a fist.

Defendants subsequently sought to gain control over Plaintiff by performing a takedown. Plaintiff admits that the officers did not "slam" him down or "jump" on his back, but that he was taken down in a manner so that he first landed on his side, and was then turned over and face-down so that he could be handcuffed. ("[The officers] pushed their knee down on my back and twisted my arm.") Once on the ground Plaintiff "screamed and yelled out in pain" and told the officers, "stop, get off me, you're hurting me," while he kicked at them. Defendants eventually gained control, placed Plaintiff under arrest, took him to their police car, and conveyed him to the Sterling Heights Police Department for booking. Plaintiff maintains that at no time during the questioning and subsequent takedown did the Defendants tell him he was under arrest, tell him they were investigating a noise complaint, or ask Plaintiff for identification.

Defendants subsequently prepared a police report including statements of fact that were relied upon by the prosecutor in deciding whether to charge Plaintiff with a crime. Based on the information provided by Defendants, Plaintiff was charged with a misdemeanor - resisting and obstructing a police officer in a criminal investigation. Officer Todd testified for the prosecution in the criminal trial held on April 27, 2011. The jury acquitted Plaintiff of the charged offense.

3

### III.  LEGAL ANALYSIS

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the plaintiff; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

#### B.  Qualified Immunity

Police officers often must make split-second, discretionary decisions while

performing their duties. To protect their ability to make these decisions, the legal system grants the police qualified immunity from lawsuit when performing discretionary functions. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (citing *Pierson v. Ray*, 386 U.S. 647, 557 (1982)). Qualified immunity is only overcome if the plaintiff can show that the officer violated a clearly established statutory or constitutional right and his actions were objectively unreasonable. *Sova*, 142 F.3d at 902 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An officer's action is objectively unreasonable if a reasonable police officer would know that the action was unlawful through clearly established law. *See Anderson v. Creighton*, 483 U.S. 635 (1987). If the police have probable cause, then the action is lawful; however, lack of probable cause is not dispositive, it merely lends support to the idea that the action was objectively unreasonable. *Id*. In the instant case, if Defendants violated Plaintiff's constitutional rights, but a reasonable police officer would have thought there was probable cause for the actions taken, Defendants would be entitled to qualified immunity. *Id*.

Here, Plaintiff alleges his Fourth Amendment right to protection against unreasonable seizures was violated by the Defendants. Plaintiff contends he was unjustly subjected to false arrest, false imprisonment, excessive force, and malicious prosecution. Ultimately, there are two irreconcilable versions of the material facts in this case - Plaintiff's verison and the version of the Defendants. "[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir. 2000). In this case, the qualified immunity inquiry is entirely fact bound, such that the resolution of the legal issues hinge on which version of the facts is believed by the tier of fact. For this reason,

Defendants' Motion will be denied.

### 1. False Arrest and Imprisonment

To succeed under a § 1983 claim for false arrest, a plaintiff must prove all of the elements of the state law tort of false arrest: (1) the plaintiff was detained on charges for which he was innocent, (2) the arrest was made by the defendants or at their instigation, and (3) the arrest was made without legal justification (probable cause). *Padlo v. VG's Food Center, Inc.*, No. 04-74986-DT, 2005 WL 3556245, *4 (E.D. Mich. 2005); *see Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633, 642 (E.D. Mich. 1996). Likewise, to succeed on a claim of false imprisonment, a plaintiff must establish that all of the elements of the state law tort have been met: (1) a person was confined, (2) the act of confinement was performed intentionally, (3) the act of confinement was performed without legal justification (probable cause), and (4) the person was aware of the confinement. *Romanski v. Detroit Entm't, LLC*, 265 F. Supp. 835 (E.D. Mich. 2003). Therefore, if probable cause existed, then Plaintiff cannot maintain a claim for either false arrest or false imprisonment. *Tope v. Howe*, 179 Mich. App. 91, 105, 445 N.W.2d 452 (1989). Probable cause exists when a police officer has "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" that the suspect committed a crime. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).

In the instant case, when considering the facts in a light most favorable to the non-moving party, there is a material question of fact as to whether Defendants' lawfully detained Plaintiff. A police officer has a legal right to stop and detain an individual only if he "reasonably suspects" that the individual is involved in criminal activity. *United States*

*v. McDaniel*, 550 F. 2d 214, 217 (5th Cir. 1977). In general, a person who is approached by the police may refuse to cooperate and go on his way, and such actions do not provide any basis for an arrest. *Terry v. Ohio*, 392 U.S. 1 (1968).

Plaintiff cooperated with the Defendants when he willingly let them into the apartment complex and explained that he was in the hallway because he was doing laundry. If the officers behaved in the manner described by Plaintiff, and they instigated a physical fight with Plaintiff without conducting any investigative inquires to dispel their initial suspicions, then it is beyond dispute that there was no probable cause to detain or arrest Plaintiff for obstructing and interfering with the officers. A fact-finder could only conclude that there was reasonable suspicion or probable cause as to arrest Plaintiff if they accept Defendants' version of events as true, which is not permitted at the summary judgment stage.

### 2. Excessive Force

In determining whether an excessive force constitutional violation occurred, the Court must look at the "objective reasonableness" of the Defendants' conduct, which depends on the facts and circumstances of each case viewed from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider are: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. If the court finds that there was no constitutional violation, then the need for a qualified immunity analysis is no longer necessary. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

These factors focus primarily on analyzing the force used preceding physical

custody, however, this list is not all inclusive when the ultimate question is "whether the totality of the circumstances justifies a particular sort of seizure." *Graham*, 490 U.S. at 396. The court conducts a balancing test where it balances the nature of the intrusion on the arrestee's Fourth Amendment rights against the government's countervailing interests that are at stake. *Id.* The Sixth Circuit has stated that this standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

In this case, the alleged crime was not severe and did not involve any violence or immediate threat to safety. When considering the facts in a light most favorable to the Plaintiff, Plaintiff did not actively resist arrest or attempt to evade the officers, but only instinctively withdraw his hand when the officers reached to detain him. Defendants, however, assert that Plaintiff was belligerent, evasive, and abusive, and that he clenched his fist in a threatening manner, causing them to fear for Officer Todd's safety. The Sixth Circuit has held that where the question of reasonable force hinges on which version of the facts is more believable, summary judgment on qualified immunity is improper. *Thompson v. Grida*, 656 F.3d 365 (6th Cir. 2011).

### 3. Malicious Prosecution

To sustain a Fourth Amendment Violation for Malicious Prosecution, Plaintiff must show that: (1) the defendant instituted a criminal action against him, (2) the criminal action was resolved in Plaintiff's favor, (3) probable cause with which to initiate the criminal action did not exist, and (4) the defendant acted maliciously. *Owens v. Carpenay*, 939 F. Supp. 558 (E.D. Mich. 1996).

In the instant case, a criminal prosecution was initiated against Plaintiff for obstructing and resisting the defendant officers. However, as previous discussed, when looking at the facts in a light most favorable to the Plaintiff, it is questionable whether the officers had probable cause for the arrest and charge. Plaintiff suffered a deprivation fo liberty because he was arrested, detained, and bound over for trial. The criminal proceedings were resolved in Plaintiff's favor when the jury acquitted him of the charge. Under these facts, Defendants' Motion for Summary Judgment as to Plaintiff's malicious prosecution claim must be denied.

### IV.  CONCLUSION

Based on the facts above, this Court will DENY Defendants' Motion for Summary Judgment [#15].

SO ORDERED.

Dated: May 21, 2014                                               /s/Gershwin A Drain
                                                                                GERSHWIN A. DRAIN
                                                                                UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 21, 2014, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk